4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB ~ 9 2001

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Respondent–Plaintiff | § | |
| | § | |
| vs. | § | CR B–99–192 |
| | § | |
| ALFREDO CASAS–GARCIA, | § | |
| Petitioner–Defendant | § | |
| (CA B–00–187) | § | |

## GOVERNMENT'S ANSWER, MOTION FOR DISMISSAL UNDER 8(a) OF THE RULES FOLL. 28 U.S.C. § 2255, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

1.

The court ordered the Government to respond to Alfredo Casas–Garcia's ("Casas") 28 U.S.C. §2255 motion filed on December 21, 2000, by February 20, 2001. The Government moves to dismiss and, in the alternative, moves for summary judgment.

2.

Casas was charged by indictment in the Southern District of Texas, Brownsville Division, with attempted illegal entry committed on April 19, 1999, in violation Title 8 U.S.C. §1326(b).  He pled guilty to the indictment on June 30, 1999, in conformance with a FED. R. CRIM. P. 11(e)(1)(B) written plea agreement, before the Honorable Judge Hilda G. Tagle (PSR 3).  In the plea agreement, in exchange for Casas' plea of guilty to the indictment, the Government agreed to recommend Casas receive full credit for "Acceptance of Responsibility" and be sentenced to the bottom of the Guideline level he scored. The statutory maximum for the offense was twenty (20) years.

The probation department scored the instant offense at base offense level 8, with a sixteen–level Specific Offense increase by virtue of his prior aggravated felony conviction and recommended, in concert with the plea agreement, that he receive a three–level downward adjustment for timely acceptance of responsibility under U.S.S.G. §3E1.1(a,b) for a total offense level score of twenty–one (21).  His criminal history included a 1993 state felony aggravated assault conviction for which he was assessed five years imprisonment.   His prior convictions resulted in a criminal history score of seven, placing him in Criminal History Category IV. (PSR ¶ 29).  Casas did not object to the PSR.

On October 14, 1999, at sentencing, the district court adopted the PSR as written and sentenced Casas to fifty–seven (57) months imprisonment, to be followed by a three-year term of Supervised Release for the instant offense.  He was also ordered to pay $100.00 in mandatory costs.  The judgment was entered October 20, 1999.

On October 26, 1999, Casas filed Notice of Appeal.   On July 12, 2000, Casas' appeal was dismissed as frivolous (1 R. 31).  *United States v. Casas–Garcia*, No. 99–41255 (5th Cir. 2000).  On August 3, 2000, the Fifth Circuit issued the mandate.

3.

The pleading is timely.

2

4.

The Government denies each and every allegation of fact made by Casas except those supported by the record and those specifically admitted herein, and demands strict proof thereof.

5.

## ALLEGATIONS

Casas alleges his constitutional rights were violated in three regards:

a. His Fifth Amendment rights to consult with consular officials pursuant to the terms of the Vienna Convention;

b. His trial counsel was ineffective in failing to obtain the dismissal of the indictment on the grounds the Government had failed to comply with the Vienna Convention[1];

c. His indictment was defective in failing to charge a 'general intent';

d. His fifty-seven month sentence was illegal, as the Government failed to allege and prove beyond a reasonable doubt his prior aggravated felony; and

e. His indictment was defective in failing to allege that his prior aggravated felony predated his deportation.

---

[1]Although petitioner alleges this ground in the summary title of the ground on page 10 of his memorandum in support of his application, the proceeding body of the argument relates to his complaint that his indictment was defective in failing to allege a general intent.

3

5.

## A. & B. <u>VIENNA CONVENTION CLAIMS</u>.

### <u>Casas' Burden</u>

Casas' first hurdle is that of "cause and prejudice". *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584 (1977)(holding "plain error" incorrect standard for §2255and requiring "cause and prejudice" standard). Casas must first show cause that would excuse his failure to raise this claim on direct appeal and actual prejudice from the error that he now alleges. The motion should be denied and dismissed under Rule 8(a) of the rules foll. 28 U.S.C. §2255 inasmuch as he offers no cause and prejudice for obtaining review on collateral attack. *See, e.g., United States v. Shaid*, 937 F.2d 228, 231–32 & n.7 (5th Cir. 1991) (en banc) (constitutional or jurisdictional issue reviewable for first time on collateral attack only if the movant demonstrates cause for his procedural default and actual resulting prejudice or that the uncorrected error would result in a complete miscarriage of justice).

An allegation of "miscarriage of justice" warrants collateral review where a constitutional violation has alleged to have caused the conviction of one innocent of the crime. *McCleskey v. Zant*, 499 U.S. 467, 495, 111 S.Ct. 1454, 1470 (1991); *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 2643 (1986). "The 'cause' standard requires [the movant] to show that 'some objective factor external to the defense' prevented him from raising on direct appeal the claim he now advances." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (quoting *Romero v.*

4

*Collins*, 961 F.2d 1181, 1183 [5th Cir. 1992]) which in turn quotes *Murray*, 477 U.S. at 488, 106 S.Ct. at 2645. "Objective factors that constitute cause include interference by officials that makes compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to [the Petitioner] at the prior occasion, and ineffective assistance of counsel in the constitutional sense." *Id.* The only "cause" proffered by Casas was his claimed ignorance of his "rights" under the 'Treaty'. Casas alleges that he suffered "prejudice" as a result, in that consular officials would have likely advised him to remain silent. He would have refrained from making incriminating statements following his arrest. Further, that his attorney should have obtained a dismissal of charges as a result of the treaty violation.

It is doubtful that Mexican consular officials could have provided Casas any advice about rights unknown to Casas. Casas' PSR reflects that Casas has several prior convictions and many more arrests in this country. Casas could likely advise consular officials regarding an accused's rights following arrest. Casas does not indicate what incriminating statements he made following his arrest nor the significance of such statements in establishing his guilt for this general intent crime. Indeed, the charge of attempted illegal entry would not require any admissions by Casas. The evidence of his attempted entry would have been gathered prior to his arrest. His identity and prior immigration and criminal record would be established by fingerprint-matched government records. Even assuming

5

Casas' premise of likely being advised to remain silent, any admissions by him clearly did not create prejudice rising to the level of a miscarriage of justice.

To avoid the consequences of a dismissal by applying the fundamental-miscarriage–of–justice exception to Rule 9(b) foll. 28 U.S.C. §2255, a movant must demonstrate, as a factual matter, that he did not commit the crime of conviction. *Schlup v. Delo*, 115 S.Ct. 851, 861, 867 (1995); *Ward v. Cain*, 53 F.3d 106, 107 (5th Cir. 1995) (citing *Schlup*). Stated differently, the movant must demonstrate that the failure to consider his claim will result in his continued incarceration though innocent. *See Saahir v. Collins*, 956 F.2d 115, 120 (5th Cir. 1992); *United States v. Espinoza*, 82 F.3d 640, 642 (5th Cir.1996) (citing *Saahir*). Casas does not allege he is innocent. This pleading is more rather a request to set aside his conviction due to a collateral treaty violation.

As such, Casas confronts his next hurdle: establishing the Vienna Convention confers "personal rights" upon inmates; the violation of which rise to the level of constitutional violations cognizable under §2255. Casas fails in this next hurdle as well. Casas cites *United States v. Lombera–Camorlinga*, 170 F.3d 1241 (9th Cir. 1999) for that proposition. However, such holding in *Lombera* was reviewed *en banc* and withdrawn at 206 F.3d 882 (9th Cir. 2000). No case law has interpreted the Vienna Convention to confer such "personal rights". In *Breard v. Greene,* 118 S.Ct. 1352 (1998), the Supreme Court declined to characterize the Vienna Convention as confirming "personal" rights upon individuals, "The Vienna Convention–which arguably confers on an individual the right to consular

6

assistance following arrest...." See– *United States v. Ediale*, 201 F.3d 438 (4th Cir. 1999). Even if "personal rights" were so created, the 'Treaty' does not create constitutional or fundamental rights. *United States v. Ademaj*, 170 F.3d 58, 67 (1st Cir. 1999); *Murphy v. Netherland*, 116 F.3d 97, 100 (4th Cir. 1997). Regardless, actual prejudice is necessary. "It is extremely doubtful that the violation (of the Vienna Convention) should result in the overturning of a final judgment of conviction without some showing that the violation had some effect on trial". *Breard*, 118 S.Ct. at 1355; *Faulder v. Johnson*, 81 F.3d 515, 520 (5th Cir. 1996).

Here, Casas was charged and convicted of attempted illegal entry, a crime for which the evidence consists of Casas' actions in attempting to enter as well as government records. Assuming Casas' factual claims are true, Casas does not allege what statements he made and how they impacted his conviction.

Regarding the allegations of ineffectiveness based upon his attorney not obtaining a dismissal for the alleged violation of the Vienna Convention and convincing him to plead guilty, as this issue provides no basis for dismissal, Casas can demonstrate no deficiency in representation on the part of his attorney. Because Casas can make no showing that his counsel's performance was deficient, this Court need not inquire into the prejudice prong of the *Strickland* test. *See Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052 (1984). ("[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.").

7

Casas does not meet his burden of allegation. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).   To demonstrate prejudice under that standard, he would have to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different", (i.e., that Casa would not have plead guilty). *Id.* at 694, 104 S.Ct. at 2068; *United States v. Torres*, 163 F.3d 909, 912 & ns.11 through 15 (5th Cir. 1999); *United States v. Flores*, 135 F.3d 1000, 1007 n.23 (5th Cir. 1998) ("[M]ost of Flores' claims are procedurally barred and there has been no showing of cause for the procedural default or that manifest injustice would result from the bar."). Moreover, assuming, *arguendo*, that he does demonstrate a deficient performance, Casas fails to demonstrate prejudice.

### C., D., & E.  APPRENDI COMPLAINTS

### Jurisdiction.

The first case to broach the retroactivity of *Apprendi*'s holding that a jury finding is required on a fact that increases a statutory maximum penalty is *United States v. Murphy*, 109 F. Supp.2nd 1059 (D. Minn. 2000).   In a collateral attack on a judgment of conviction for violations of 21 U.S.C. §§846, 841(a)(1) and 861, Murphy asserted that his rights under the Fifth and Sixth Amendments were violated when the district court used the type or quantity of drugs involved in the offense to impose the penalties authorized by 21 U.S.C. § 841(a)(1). *Murphy*, 109 F. Supp.2nd at 1061.   Citing *United States v. Aguayo–Delgado*, 220 F.3d 926 (8th Cir. 2000), the court noted that "in *Apprendi*, the Supreme Court made it clear that

8

the principle discussed in *Jones [v. United States,* 526 U.S. 227, 119 S.Ct. 1215 (1999)] is a rule of constitutional law." *Id.* Thus concluding that *Apprendi* announced a new rule of constitutional law, the *Murphy* court assessed the applicability of that rule to cases on collateral review.

The *Murphy* court proceeded from the proposition that new constitutional rules of criminal procedure apply retroactively only to cases which are on direct state or federal appeal at the time the rule is announced. *Murphy,* 109 F. Supp.2nd at 1063 (citing *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708 [1987]). "A new rule is not to be applied retroactively on collateral review unless the rule falls within one of two narrow exceptions:  (1) the new rule places certain kinds of primary conduct beyond the power of the criminal lawmaking authority to proscribe, or (2) the rule requires the observance of those procedures that are implicit in the concept of ordered liberty." *Id.*  (citing *Teague v. Lane,* 489 U.S. 288, 305-310, 109 S.Ct. 1060 [1989]).  The court reasoned that the first exception to the general rule prohibiting retroactivity "applies only to rules that decriminalize a class of conduct or prohibit a certain category of punishment for a class of defendants because of their status or offense." *Murphy,* at 1063.  The judge determined that this exception was inapplicable to *Apprendi.*

*Apprendi,* the district judge continued, arguably falls into the second exception to the general rule prohibiting retroactivity:

> *Apprendi,* the court declared, arguably implicates the second exception "which applies to those 'watershed rules of criminal procedure' which 'alter our understanding of the bedrock procedural elements

> essential to the fairness of a proceeding' and 'without which the likelihood of an accurate conviction is seriously diminished.'"

109 F. Supp.2nd at 1063 (quoting *Sawyer v. Smith*, 497 U.S. 227, 242–244, 110 S.Ct. 2822 [1990]). *Murphy* concluded that *Apprendi*'s requirement that any fact that increases the statutory maximum punishment must be submitted to a jury and determined beyond a reasonable doubt is so grounded in fundamental fairness that it may be considered of watershed importance. The court concluded that *Apprendi* was applicable to Murphy's motion for § 2255 relief. *Murphy*, 109 F. Supp.2nd at 1064.

The United States Court of Appeals for the Ninth Circuit reached a contrary conclusion in *Jones v. Smith*, _ F.3d _, 2000 WL 1664426 (9th Cir. Nov. 7, 2000). The Ninth Circuit initiated its retroactivity analysis with the observation that "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government [or] if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Smith*, _ F.3d at _, 2000 WL 1664426 (quoting *Teague*, 489 U.S. at 301, 109 S.Ct. at 1060). The court concluded that *Apprendi* certainly established a new rule.

To apply *Teague,* the court continued, requires a three-step inquiry:

> First, the court must ascertain the date on which the defendant's judgment of conviction and sentence became final for *Teague* purposes. Second, the Court must survey the legal landscape as it then existed and determine whether a state court considering the defendant's claim at the time it became final would have

10

CutePDF - www.fastio.com

> felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution. Finally, even if the court determines that the defendant seeks the benefit of a new rule, the court must decide whether that rule falls within one of the two narrow exceptions to the retroactivity principle.

*Smith*, _ F.3d at _ 2000 WL 1664426 (quoting *Caspari v. Bohlen*, 510 U.S. 383, 390, 114 S.Ct. 948 [1994]). Like the district judge in *Murphy*, the *Smith* court quickly eliminated application of the first *Teague* exception. However, the Ninth Circuit parted company with *Murphy*, observing, "the *Apprendi* rule ... is neither implicit in the concept of ordered liberty nor an absolute prerequisite to a fair trial." *Smith* at _ F.3d at _, 2000 WL 1664426.

In *United States v. Pittman*, _ Fed. Supp.2nd _, 2000 WL 1708962 (D. Or. Nov. 15, 2000), the district court agreed with *Murphy* that *Apprendi* established a new rule of law. The court observed that *Jones v. Smith*, *supra*, did not address the precise issues raised in the case–at–bar:"that of the viability of a conviction in which application of a statutory sentencing enhancement was decided by a judge under a preponderance of the evidence standard rather than by a jury under a reasonable doubt standard." *Id.* The district judge ultimately concluded that the new rules announced in *Apprendi* did not require retroactive application:

> I find that the two new rules announced in *Apprendi* that (1) a jury, rather than a judge, must determine facts supporting a statutory sentencing enhancement and (2) that this determination must be made beyond a reasonable doubt – – are not the type of "watershed" rules implicating fundamental fairness and thus, requiring retroactive application on collateral review. First, I find that the new *Apprendi* rules do not directly relate to the accuracy of the conviction or

11

sentence.  Like the application of *Gaudin* to convictions for making false statements in federal loan applications, the factual inquiry and determinations were made; they were simply made by a different fact finder.  Further, the fact that the application of a different standard of review might lead to different results is insufficient.  In *Mackey v. United States*, 401 U.S. 667, 91 S.Ct. 1160 (1971), the Supreme Court expressly rejected a claim that the mere "probability" that a different result would be reached by application of a new rule was insufficient to trigger retroactive application.   401 U.S. at 672, 91 S.Ct. at 1163.

*Pittman*, _ Fed. Supp.2nd at _, 2000 WL 1708962 *7.  In accord, *United States v. Brown*, _ Fed. Supp. 2nd _, 2000 WL 1880280 (N.D. Tex. 2000); *United States v. Johnson*, _ Fed. Supp.2nd _, 2000 WL 1801401 (D. Neb. Dec. 7,. 2000). *See also, West v. United States*, _ Fed. Supp.2nd _, 2000 WL 1785086 (D. Md. Dec. 4, 2000)(there is no "watershed principle" in *Apprendi* requiring retroactive application under *Teague*); *United States v. Joseph, III*, ___ F.Supp.2d ___, 2000 WL 1789989 (E.D.La. Dec.5, 2000); *West v. United States*, ___ F.Supp.2d ___ , 2000 WL 1790425 (D.Md. Dec. 4, 2000); Ware v. United States, 124 Fed. Supp. 2nd 590 M.D. Tenn 2000)(*Apprendi* is not a watershed rule of criminal procedure within the meaning of the *Teague* doctrine. It does not apply retroactively),  and *United States v. Shunk*, 113 F.3d 31, 35–37 (5th Cir. 1997).

The weight of authority supports the conclusion that the rule of *Apprendi* is not to be applied retroactively to cases on collateral review.   There is no question in the case *sub judice* that the evidence amassed against Casas is overwhelming.   He plead guilty and failed to contest the fact and nature of his prior aggravated conviction.  Moreover, the indictment inferentially apprized him

12

that he was subject to the twenty-year maximum. Consequently, the absence of an allegation in the indictment of the prior conviction and the fact that it was found by the court does not impact on the fairness of the proceeding. This Court should thus dismiss the instant action as time barred.

D. <u>Failure to Allege General Intent for Attempted Illegal Entry</u>

A post-conviction motion to correct or vacate a sentence under §2255 "is reserved for the transgression of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice." *United States v. Palomo*, 80 F.3d 138, 140 n.3 (5th Cir. 1996) (citing *United States v. Vaughn*, 955 F.2d 367, 368 [5th Cir. 1992]); *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1993) (quoting *United States v. Shaid*, 937 F.2d 228, 232 n.7 [5th Cir. 1991]) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 167-68, 102 S.Ct. 1584, 1594 [1982]). Casas does not explain why he failed to preserve the above challenge during the pendency of his criminal case or on direct appeal. For the reasons discussed above, relating to his burden to demonstrate "cause" for failing to bring the complaint on direct appeal, and resultant "prejudice", Casas fails to successfully meet his burden. *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584 (1977).

Even if Casas succeeded in his burden, he would fail on the merits. Casas contends that the criminal indictment is fundamentally defective because it fails

to allege that his attempt to re-enter the United States was accompanied by his intent to violate the law.

Casas did not challenge the sufficiency of the indictment to charge an offense in the district court. As a result, this Court will construe it liberally. *United States v. Guzman-Ocampo*, 2000 WL 1868226 (5th Cir. [Tex.]); *United States v. Threadgill*, 172 F.3d 357, 373 (5th Cir. 1999). "When the sufficiency of an indictment is first challenged at the appellate level, the language is liberally construed and reversible error will not be found unless the wording cannot, by reasonable construction, charge a crime." *United States v. Barksdale-Contreras*, 972 F.2d 111, 113 (5th Cir. 1992).

This Court has repeatedly stated the elements of a §1326 violation are those set forth in the language of the statute. *See United States v. Asibor*, 109 F.3d 1023, 1037 (5th Cir. 1997); *United States v. Cabrera-Teran*, 168 F.3d 141, 143 (5th Cir. 1999); *United States v. Vasquez-Olvera*, 999 F.2d 943, 945 (5th Cir. 1993); *United States v. Terrazas-Carrasco*, 861 F.2d 93, 96 (5th Cir. 1988).

The version of §1326(a) of Title 8 in effect at the time Casas committed the offense stated:

> Subject to subsection (b) of this section, any alien who –
>
> (1) has been denied admission, excluded, deported or removed or has departed the United States while an order of exclusion, deportation or removal is outstanding and thereafter
> (2) enters, attempts to enter, or is at any time found in the United States, unless (A) prior to his re-embarkation at a place outside the United States or his application for admission from foreign contiguous

14

CHAPDF - www.testis.com

> territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be fined under Title 18, or imprisoned not more than 2 years, or both.

8 U.S.C. §1326.

The indictment tracked the statutory language by charging as follows:

> On or about April 19, 1999, in the Southern District of Texas and within the jurisdiction of the Court, Defendant, ALFREDO CASAS-GARCIA, Jr., an alien who had previously been denied admission, excluded, deported, and removed, knowingly and unlawfully attempted to enter the United States the said defendant having not obtained the consent from the Attorney General of the United States for re-application by the Defendant for admission into the United States. [Violation: Title 8, United States Code, Section 1326.]

(1 R. 1). Since the indictment tracked the statute, it alleged all of the elements of the offense. The use of the extra-statutory terms of "knowingly" and "unlawfully" essentially charges an intent higher than general intent, essentially as a 'specific intent' crime. "Knowingly" as defined by the FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS, "means that the act was done voluntarily and intentionally, not because of mistake or accident". The term "unlawfully" notices Casas that his attempted act of re-entry was against the law. *United States v. Campos-Asencio*, 822 F.2d 506, 508 (5th Cir. 1987). Section 1326(a) makes entry "unlawful" when it is following deportation and without the Attorney General's permission. Those two terms alone would satisfy the holding of *Gracidas-Ulibarry*. *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1196 (9th Cir. 2000). Casas was charged essentially with

intending to enter unlawfully, that is, without the Attorney General's permission. The "otherwise innocent conduct" potential is precluded by the indictment and negated by the facts of the case.   "The presumption in favor of scienter generally requires a court to read into a statute only that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct'" *Carter v. United States*, 120 S.Ct. 2159, 2162 (2000).  The attempted entry by Casas without the Attorney General's permission distinguishes Casas from a deported alien who approaches the border with the intent to enter lawfully.

Further, the nature of the crime as an "attempt" does not trigger 'common law' concepts of 'specific intent'.  The Ninth Circuit in *Gracidas–Ulibarry* held that attempted illegal entry was a specific intent crime. *Gracidas–Ulibarry*, 231 F.3d at 1196.  The Ninth Circuit reasoned that the statutory use of the term "attempt", absent a statutory definition, triggered the application of 'specific intent' present at 'common law' for criminal attempts.  Inferring congressional intent to attach 'specific intent' to attempted re–entry, such interpretation is further bolstered by the fact that re–entry is otherwise innocent conduct.  *Id.* at 1194.  The court explained, that under I.N.S. regulations, a deported alien could lawfully re–apply for admission into the United States at the border.  Although a legally prescribed procedure, such re–application could be violative of attempted re–entry under §1326, if all that were required was proof of the general intent to re–enter. Citing the MODEL PENAL CODE & COMMENTARIES, "[T]he general principle is thus that the actor must affirmatively desire to engage in the conduct or to cause the result that will

16

constitute the principle offense." *Id.* at 1196.   In order to apply these principles to attempted illegal re-entry and to distinguish such innocent conduct from criminal conduct, the Ninth Circuit defined the elements of attempted illegal re-entry as follows:

> (1) "the defendant had the purpose, (i.e., conscious desire, to re-enter the United States without the express consent of the Attorney General); (2) the defendant committed an overt act that was a substantial step toward re-entering without that consent; (3) the defendant was not a citizen of the United States; (4) the defendant had previously been lawfully denied admission, excluded, deported or removed from the United States; and (5) the Attorney General had not consented to the defendant's attempted re-entry."

The context of the above finding related to the district court rejecting Gracidas-Ulibarry's proposed jury instruction requiring 'specific intent' that he intended to enter without consent. *Id.* at 1197, n. 12.  The Ninth Circuit found the error harmless, as the evidence was uncontested that Gracidas-Ulibarry used a false name and falsely declared himself to be a U.S. citizen, (just as Casas did) thus overwhelmingly establishing the necessary 'specific intent'.  The Ninth Circuit did not discuss the elemental charging requisites of attempted illegal re-entry.

The government suggests the Ninth Circuit's opinion is based upon a false premise.  Distinguishing between the 'otherwise innocent conduct' of attempting to legally enter and the conduct of attempting to enter illegally is not a dilemma of statutory construction, requiring a higher scienter, but rather a controversy of only factual proportions.   Attempted illegal entry, a general intent crime, is not significantly susceptible to criminalizing 'otherwise innocent' behavior.  See: 8

17

C.F.R. §§2.1 and 212.2, aliens are invited to approach the ports of entry to legally apply to enter the United States. This activity occurs routinely. Those who are truthful, who are found to be ineligible, are turned away and denied admission, without being charged with attempted illegal entry. If they were charged by an overzealous official with attempted illegal entry, as a general intent crime, their acquittal would be assured by a jury instruction directing the jury to distinguish between innocent and illegal conduct. *United States v. Tomblin*, 46 F.3d 1369, 1380 (5th Cir. 1995). Under Fifth Circuit jurisprudence of 'criminal attempt', "liability for attempt attaches only if the defendant's actions have proceeded to the point where, if not interrupted, would culminate in the commission of the underlying offense". *United States v. Polk*, 118 F.3d 286, 291 (5th Cir. 1997). Even an alien who has been deported, who petitions for entry at the border without any eligibility to enter whatsoever, yet without misrepresenting his status, under Fifth Circuit jurisprudence, would not have committed attempted illegal entry, as his actions would be "interrupted" by the immigration inspector refusing his entry. A similar drama was played out in *United States v. Morales-Tovar*, 37 F.Supp.2d 846, 849 (W.D. Tex. 1999). Cited by *Gracidas-Ulibarry*, and coincidentally presided over and authored by the trial judge in *Polk,* Morales had been deported following his commission of an aggravated felony. He returned to the border and reportedly indicated that he wanted to replace his permanent residency card. The trial court acquitted Morales of attempted illegal entry based on the court's finding that Morales only petitioned for a replacement permanent resident card at the border

18

In *United States v. Cardenas–Alvarez*, 987 F.2d 1129, 131–32 (5th Cir. 1993), in a sufficiency contest in which the jury found that Cardenas attempted to illegally enter while he claimed that he was merely engaged in the 'otherwise innocent' act of making an inquiry at the border, this Court found sufficient evidence and announced the elements of attempted illegal entry:

> "1) the defendant was an alien at the time of the alleged offense; 2) the defendant had previously been arrested and deported; 3) the defendant attempted to enter the United States; and 4) the defendant had not received the express consent of the Attorney General of the United States to apply for re–admission to the United States since the time of his previous arrest and deportation."

Confronting the same dilemma as the Ninth Circuit in *Gracidas–Ulibarry*, that of distinguishing the 'otherwise innocent conduct' of lawfully applying for entry from the criminal conduct of illegally attempting to enter, this Circuit correctly interpreted "attempted" to modify only the act of entry and applied its common usage, without invoking its common law meaning. The invocation of common law meaning of "attempt" is performed against the backdrop of legislative intent. "When Congress has used a term that has a settled common law meaning, … a court must infer, unless the statute otherwise indicates, that Congress means to incorporate the established meaning …of that term". *Gracidas–Ulibarry*, 231 F.3d at 1193 (citing *Neder v. United States*, 527 U.S. 1, 21, 119 S.Ct. 1827 [1999]). The placement of the term "attempt" as a modifier of entry arguably reflects the limited application Congress intended. If Congress intended to require attempted illegal entry to be a 'specific intent' crime it could have said so. It would create the

C.F.R. §§2.1 and 212.2, aliens are invited to approach the ports of entry to legally apply to enter the United States.  This activity occurs routinely.  Those who are truthful, who are found to be ineligible, are turned away and denied admission, without being charged with attempted illegal entry.  If they were charged by an overzealous official with attempted illegal entry, as a general intent crime, their acquittal would be assured by a jury instruction directing the jury to distinguish between innocent and illegal conduct.  *United States v. Tomblin*, 46 F.3d 1369, 1380 (5th Cir. 1995).  Under Fifth Circuit jurisprudence of 'criminal attempt', "liability for attempt attaches only if the defendant's actions have proceeded to the point where, if not interrupted, would culminate in the commission of the underlying offense".  *United States v. Polk*, 118 F.3d 286, 291 (5th Cir. 1997).  Even an alien who has been deported, who petitions for entry at the border without any eligibility to enter whatsoever, yet without misrepresenting his status, under Fifth Circuit jurisprudence, would not have committed attempted illegal entry, as his actions would be "interrupted" by the immigration inspector refusing his entry.  A similar drama was played out in *United States v. Morales–Tovar*, 37 F.Supp.2d 846, 849 (W.D. Tex. 1999).  Cited by *Gracidas–Ulibarry*, and coincidentally presided over and authored by the trial judge in *Polk,* Morales had been deported following his commission of an aggravated felony.  He returned to the border and reportedly indicated that he wanted to replace his permanent residency card.  The trial court acquitted Morales of attempted illegal entry based on the court's finding that Morales only petitioned for a replacement permanent resident card at the border

and had not actually applied for admission, a finding consistent with the scienter of general intent.   *Morales*, 37 F.Supp. 2d at 850. Thereafter, the district court explained that only by requiring 'specific intent' for attempted illegal entry cases could innocent conduct be distinguished from criminal.

The government questions whether the Ninth Circuit's opinion in *Gracidas-Ulibarry* has precedential value in the Fifth Circuit.   The Ninth Circuit has interpreted the use of the term "attempt" in the §1326 clause, "attempt to enter", to allow the common law principle of 'specific intent' to apply to the entire charge instead of merely the term "enter".   There is jurisprudence to suggest that §1326 does not possess common law roots.   The Court of Appeals for the Eleventh Circuit in *United States v. Henry*, 111 F.3d 111, 113-14 (11th Cir. 1997), followed *United States v. Pena-Cabanillas,* 394 F.2d 785 (9th Cir. 1968) in holding that no proof of specific intent is required under §1326 after observing "[s]ection 1326 is not based upon any common law crime but is a regulatory statute enacted to assist in the control of unlawful immigration by aliens."

Even if 'common law' principles are triggered by the use of the term, "attempt", a more appropriate application would restrict specific intent to the *actus reus* of "entry".   *Carter,* 120 S.Ct. at 2169.   The presumption of scienter should be limited to the minimum *actus reus* which will distinguish criminal conduct from 'otherwise innocent conduct'.   Casas' attempt to enter would distinguish his behavior from an otherwise innocent person seeking to lawfully apply for admission, as Casas did not have permission to enter.

In *United States v. Cardenas–Alvarez*, 987 F.2d 1129, 131–32 (5th Cir. 1993), in a sufficiency contest in which the jury found that Cardenas attempted to illegally enter while he claimed that he was merely engaged in the 'otherwise innocent' act of making an inquiry at the border, this Court found sufficient evidence and announced the elements of attempted illegal entry:

> "1) the defendant was an alien at the time of the alleged offense; 2) the defendant had previously been arrested and deported; 3) the defendant attempted to enter the United States; and 4) the defendant had not received the express consent of the Attorney General of the United States to apply for re–admission to the United States since the time of his previous arrest and deportation."

Confronting the same dilemma as the Ninth Circuit in *Gracidas–Ulibarry*, that of distinguishing the 'otherwise innocent conduct' of lawfully applying for entry from the criminal conduct of illegally attempting to enter, this Circuit correctly interpreted "attempted" to modify only the act of entry and applied its common usage, without invoking its common law meaning. The invocation of common law meaning of "attempt" is performed against the backdrop of legislative intent. "When Congress has used a term that has a settled common law meaning, ... a court must infer, unless the statute otherwise indicates, that Congress means to incorporate the established meaning ...of that term". *Gracidas–Ulibarry*, 231 F.3d at 1193 (citing *Neder v. United States*, 527 U.S. 1, 21, 119 S.Ct. 1827 [1999]). The placement of the term "attempt" as a modifier of entry arguably reflects the limited application Congress intended. If Congress intended to require attempted illegal entry to be a 'specific intent' crime it could have said so. It would create the

20

anomalous situation in which an alien who attempts to enter incorrectly believing he has permission of the Attorney General would not be guilty of attempted illegal entry, yet the same alien who successfully enters would be guilty of illegal entry.

The recent ruling of this Court in *Guzman-Ocampo*, in applying general intent to §1326 provides no refuge to Casas.  This Court's comprehensive analysis of the necessary scienter for §1326 resulted in the finding that the only scienter necessary is that the entry must be a voluntary act, rejecting specific intent.

Even if this Circuit agrees with the Ninth Circuit's opinion in *Gracidas-Ulibarry*, Casas' position is untenable.  Casas' false claim of citizenship at the point of his attempted entry negates any possible prejudice to Casas.  *Gracidas-Ulibarry*, 231 F.3d at 1192.  Casas' challenge to the sufficiency of the indictment is also particularly unavailing when construed liberally, because it is being challenged for the first time on collateral review.

### E.  Timing of Prior Conviction.

Casas also argues that the timing of the prior aggravated felony conviction, coming prior to his deportation, represents a "fact" which must be alleged and proven.  Casas attempts to parse §1326(b) into separate components; the "fact" of the prior conviction, and the "timing" of the prior conviction.  Casas reasons that, although the "fact" of a prior conviction has been deemed a "sentencing factor" under *Almendarez-Torres*, the 'timing' of the prior conviction is a separate circumstance which represents an unalleged and unproven "fact" (other than prior

21

conviction) which increases the sentence beyond that established as the maximum, in violation of the holding in *Apprendi*.

In reviewing the legislative history and statutory construction of §1326(b), the court in *Almendarez–Torres*, found §1326(b) to be a punishment provision of §1326(a).  Noting the "statutory subject matter" of §1326(b) to be "recidivism", and unrelated to the commission of the offense, the court noted the long standing position recidivism enjoys as a sentencing factor, in finding it non–violative of due process.  *Id*.  118 S.Ct. at 1224, 1230.  The "timing" of Casas' prior conviction falls within the 'subject matter' of recidivism in §1326(b), as announced by *Almendarez–Torres,* and represents a distinction without a difference.  There is no logical or legal reason to justify carving out circumstances related to the "timing" of prior convictions to remove them as sentencing factors and elevate them to elements of the offense.

*Apprendi* provides Casas little solace.  In *Apprendi*, the court reiterated its finding that *Almendarez–Torres* relied upon recidivism to justify increased punishment under §1326(b).  Furthermore, as the court recognized in *Apprendi*, due process concerns are mitigated, when, as occurred both in *Almendarez–Torres* and in the instant case, the defendant does not contest the "fact" of his prior conviction.  *Apprendi,* 120 S.Ct. at 2362.  Further mitigation exists here, in that the district court found at sentencing that the prior conviction in question occurred, as well as the date of the conviction (1 R. 25).

22

As Casas makes this claim for the first time at collateral relief, this Court applies the "cause" and "prejudice" test, discussed previously.  As Casas neglects to establish any cause for failing to bring this issue on appeal or to establish any prejudice to him, he fails in his burden.

Even if Casas could establish "cause" and "prejudice", he still fails on the merits.  Even review of his claim is under the plain error standard offers him no refuge.  *United States v. Meshack*, 225 F.3d 556, 575 (5th Cir. 2000) (applying plain error standard where government conceded *Apprendi* applied to prosecution under 21 U.S.C. §841); *see also United States v. Rios–Quintero*, 204 F.3d 214, 215 (5th Cir. 2000) (applying plain error standard to claim that under *Jones v. United States*, 526 U.S. 227, 199 S.Ct. 1215 [1999], drug quantity was an element under §841 that had to be plead in the indictment and proved beyond a reasonable doubt to a jury).

To establish plain error, the petitioner must demonstrate:  (1) there was an error; (2) the error was clear and obvious; and (3) the error affected his or her substantial rights.  *Johnson v. United States*, 520 U.S. 461, 465–467, 117 S.Ct. 1547 (1997) (citations omitted).  If a Petitioner establishes plain error, this Court should correct the forfeited error if it seriously affects the fairness, integrity or public reputation of judicial proceedings.  *Id.*

The holding in *Apprendi* was "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

23

*Apprendi*, 530 U.S. at ___, 120 S.Ct. at 2362–63.   Assuming *arguendo*, that *Apprendi* should be extended to the timing of a prior conviction under §1326(b), because *Apprendi* did not address the issue of whether the fact that triggers the increased statutory maximum must be alleged in the indictment, Casas's claimed error is not plain or obvious.  *See Apprendi*, 530 U.S. at ___, 120 S.Ct. at 2355 n.3. In addition, Casas had notice at the time of his guilty plea that the United States intended to prove that the provisions of § 1326 (b)(2) were applicable.   The indictment described the violation Casas was charged with as: "Violation: Title 8, United States Code, Section 1326(a) and (b)(2)" (1 R. 1).  In addition, the district court admonished Casas he was facing a sentence of up to twenty (20) years (2 R. 18).  Prior to sentencing, Casas received notice of his prior felony conviction for aggravated assault and of the applicability of U.S.S.G. §2L1.2(b)(1)(A), which requires an increased sentence if the deportation was after conviction of an aggravated felony (PSR ¶'s 13, 26).

With regard to the requirement that his prior conviction be proved beyond a reasonable doubt to a jury, Casas waived his right to a jury in this case.  In addition, he did not contest at sentencing any fact relating to his prior conviction for aggravated assault, including the timing of the conviction (PSR; 1 R. 24).  As discussed previously, the district court found both the fact of the prior conviction and the date of the prior conviction. Under these circumstances, no plain error is demonstrated.  *United States v. Walker*, 228 F.3d 1276, 1278 (11th Cir. 2000).

24

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Government respectfully prays that Casas's §2255 petition be dismissed, or in the alternative, subject to denial by summary judgment.

Respectfully submitted,

MERVYN M. MOSBACKER
United States Attorney

Mark M. Dowd
Assistant U.S. Attorney
600 E. Harrison, # 201
Brownsville, Texas 78520
Texas Bar No. 06070500
Federal I.D. No. 9314
(956) 548-2554/Fax (956) 548-2549

25

## CERTIFICATE OF SERVICE

I, Mark M. Dowd, Assistant United States Attorney, certify that a true and correct copy of the above document has been served by placing same in United States mail, postage prepaid, today, February ___9___, 2001, addressed to:

Alfredo Casas–Garcia, Jr.,
No. 86299-079
FCI Beaumont
P.O. Box 26040
Beaumont, Texas, 77720

MARK M. DOWD
Assistant U.S. Attorney